GLORIA E. RAMOS FIGUEROA, demandante y recurrida, *v.* SAMUEL RAMOS LÓPEZ, demandado y peticionario.

*Número:* CC-96-369          *Resuelto:* 29 de enero de 1998

*David Urbina Urbina,* abogado de la parte peticionaria; *Víctor M. Bermúdez Pérez,* abogado de la parte recurrida.

## RESOLUCIÓN

Vista y analizada la comparecencia de la parte demandante recurrida para mostrar causa, *se deniega el recurso.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Hernández Denton emitió un voto particular de conformidad, al cual se unió el Juez Asociado Señor Corrada Del Río. El Juez Asociado Señor Fuster Berlingeri emitió un voto particular de conformidad. El Juez Asociado Señor Rebollo López emitió una opinión concurrente y disidente. La Juez Asociada Señora Naveira de Rodón emitió una opinión disidente. El Juez Presidente Señor Andréu García disintió sin opinión escrita.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Voto particular de conformidad emitido por el Juez Asociado Señor Hernández Denton, al cual se une el Juez Asociado Señor Corrada Del Río.

El recurso de apelación instado por el peticionario Samuel Ramos López ante el Tribunal de Circuito de Apelaciones es claramente frívolo. Por ello, estamos conformes con denegar el recurso de *certiorari* presentado ante nos, dejando así inalterada la sanción que el foro apelativo le impuso al peticionario.

I

Las partes, quienes son hermanos, participaron en un pleito sobre división y adjudicación de los bienes hereditarios de su padre Ramón Ramos Rodríguez, presentado ante el entonces Tribunal Superior, Sala de Caguas. Mediante sentencia final y firme se distribuyeron los bienes de la herencia en conformidad y haciendo referencia al Informe del Contador Partidor, al informe suplementario titulado "cuaderno particional" y al *addendum*. Dichos documentos fueron admitidos como evidencia en el caso de partición de herencia y en ellos se señalaba que el peticionario, Samuel Ramos, le adeudaba a la Sucesión ciertas cantidades de dinero, incluso trece mil trescientos setenta dólares ($13,370) a cada uno de los hermanos, entre los que figuraba la aquí recurrida, Gloria Ramos. Esta deuda no se consignó expresamente en la sentencia.

Así las cosas, Gloria Ramos instó una demanda sobre "cobro de dinero" en el Tribunal de Primera Instancia, Subsección de Distrito de Caguas, en la que alegó que su hermano, y aquí peticionario, le adeudaba trece mil cuatrocientos sesenta y dos dólares ($13,462) en concepto de la partición de herencia de su padre. Alegó, además, que la deuda era líquida y exigible, para lo cual se refirió al cuaderno particional preparado por el Contador Partidor.

Posteriormente, el Tribunal de Distrito ordenó que se uniera ese expediente al caso del Tribunal Superior para considerar la demanda como una solicitud de ejecución de sentencia. Luego de remitido el expediente, el Tribunal Superior ordenó que se continuara ventilando el caso en el Tribunal de Distrito. Este último emitió una orden mediante la cual asumió nuevamente competencia sobre el caso.

Eventualmente, el Tribunal de Distrito emitió sentencia para declarar con lugar la demanda y condenar a Samuel Ramos a pagarle a su hermana, Gloria Ramos, trece mil trescientos setenta dólares ($13,370), las costas y quinientos dólares ($500) en concepto de honorarios de abogado. Ante ese cuadro, el peticionario interpuso un recurso de apelación ante el Tribunal de Circuito de Apelaciones, el cual emitió sentencia confirmatoria. Determinó que la sentencia del tribunal de instancia hacía referencia al Informe del Contador Partidor y al cuaderno particional. Concluyó que aunque dicha sentencia no reprodujo *ad verbatim* el contenido del cuaderno ni del *addendum*, expresaba la intención de que los bienes fueran distribuidos conforme al cuaderno particional, donde se establecía que cada heredero (incluso Gloria Ramos) tenía una reclamación contra Samuel Ramos por trece mil trescientos setenta dólares ($13,370). De esta manera, estimó que la sentencia apelada había adjudicado la existencia de la deuda y que el peticionario litigó el pleito sin defensa válida, pretendiendo así no cumplir una obligación que había sido declarada por sentencia. Por ello, concluyó que la apelación era frívola y, a tenor con la Regla 85(B) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, condenó a la parte apelante, aquí peticionaria, a pagar la suma de trescientos dólares ($300) en concepto de honorarios de abogado.

Inconforme, Samuel Ramos instó un recurso de *certiorari* ante nos, planteando una serie de errores sobre la sentencia, además de alegar error en la determinación de frivolidad del Tribunal de Circuito de Apelaciones respecto a

la apelación. Examinado el recurso, decidimos acogerlo con el único objetivo de revisar la determinación del foro apelativo de condenar al peticionario al pago de honorarios de abogado. Procede denegar el recurso.

## II

Samuel Ramos no tenía argumento legal válido para negarse a cumplir con su obligación. Además, tenía conocimiento del contenido del Informe del Contador Partidor y del *addendum*. En este último documento se establecía que tenía una deuda con su hermana Gloria Ramos. Sin embargo, pretendía utilizar la doctrina de cosa juzgada para liberarse de su obligación de pago, aduciendo que en el texto de la sentencia del tribunal de instancia no se hizo mención de la referida deuda.

Cabe señalar que el *addendum* contenía la referencia a dicha obligación. De hecho, la propia sentencia plasmaba el interés de que se cumpliera con lo dispuesto en el informe y en el *addendum*. De una lectura integral de esos tres (3) documentos surge claramente la obligación del peticionario. *Pretender ampararse en el texto limitado de la sentencia para liberarse de su obligación nos parece una actitud frívola.* La obligación de Samuel Ramos hacia Gloria Ramos surgía de la sentencia y de los documentos mencionados.

Por las razones antes esbozadas, el propio Tribunal de Distrito le impuso honorarios de abogado ascendentes a quinientos dólares ($500) al peticionario por considerar que actuó con temeridad. El Tribunal de Circuito de Apelaciones confirmó esta determinación y, amparándose en el poder que le confiere la Ley de la Judicatura de Puerto Rico de 1994 y el Reglamento del Tribunal de Circuito de Apelaciones, le impuso honorarios de abogado al concluir que, a su vez, la apelación fue frívola. Nada nos parece más apropiado. Reproducir en el foro apelativo los argumentos que presentó en instancia de forma temeraria es igual-

mente frívolo y temerario, y merece ser censurado enérgicamente y desalentado por los tribunales.

No estimamos como persuasivo el argumento de que la teoría del peticionario tenía cierta lógica ni que era suficiente para determinar que no procedían las sanciones en apelación. Si así fuera, amparándose en el derecho a apelar dispuesto en la Ley de la Judicatura de Puerto Rico de 1994, toda parte perdidosa en instancia podría conseguir un abogado que esbozara una teoría que justificara su posición, por frívola que fuera. Este no es el propósito de la ley. *Permitir la presentación de casos frívolos e inmeritorios no opera a favor de la sana administración de la justicia.*

El derecho a que un panel de jueces revise las actuaciones de los tribunales de instancia no significa que exista carta abierta para apelar por cualquier razón sin contar con fundamentos válidos en derecho. Flaco servicio le hacemos a la administración de la justicia al ampararnos en el derecho a apelar para restringir la facultad concedida al Tribunal de Circuito de Apelaciones tanto en la Ley de la Judicatura de Puerto Rico de 1994 como en su reglamento, para que, en los casos que estime prudente, imponga sanciones y honorarios de abogado por la presentación de recursos frívolos.

Hoy este Tribunal actúa correctamente al denegar el presente recurso, dejando inalterada la sanción que el Tribunal de Circuito de Apelaciones impuso al peticionario.

— O —

Voto particular de conformidad emitido por el Juez Asociado Señor Fuster Berlingeri.

En el caso de autos, el 1ro de noviembre de 1996 emitimos una resolución, concediéndole a la parte recurrida un término para mostrar causa por la cual no debíamos expedir el recurso de *certiorari* solicitado y revocar la decisión del Tribunal de Circuito de Apelaciones de imponerle una

sanción al peticionario por entender que el recurso presentado por éste ante dicho foro era frívolo.

Cuando emitimos la resolución aludida, lo hicimos preocupados por la posibilidad de que el foro apelativo hubiese actuado con excesiva severidad al imponer la sanción por frivolidad aludida. En efecto, entonces, como ahora nos inquieta el efecto indeseado que puede tener una aplicación muy rígida del mecanismo de sanciones por frivolidad de parte del Tribunal de Circuito de Apelaciones, en los casos sobre los cuales tiene competencia. Ese foro fue creado por la Asamblea Legislativa precisamente para asegurar que toda persona afectada adversamente por una decisión de un tribunal de instancia, tuviese el *derecho* a que dicha decisión fuese revisada a fondo por un foro apelativo. Por ello, el Tribunal de Circuito de Apelaciones debe ser muy cuidadoso al aplicar sanciones por frivolidad, para evitar que la imposición de tales sanciones tenga un efecto adverso sobre el ejercicio del derecho aludido, al disuadir a las partes de presentar recursos de apelación ante el Tribunal de Circuito de Apelaciones por temor a ser sancionados económicamente. En mi criterio, de existir duda sobre la frivolidad de un recurso, la balanza debe inclinarse a favor del apelante o recurrente.

Lo anterior no obstante, luego de considerar más a fondo la cuestión ante nos en el caso de autos, me veo obligado a concluir que realmente no estamos en posición de determinar si la apelación presentada ante el Tribunal de Circuito de Apelaciones era frívola o no. El peticionario no nos ha puesto en condición para hacer tal determinación.

No cabe duda de que la apelación que nos concierne aquí hubiese sido frívola si el tribunal de instancia hubiese incorporado en su sentencia original el inciso (22) del *Addendum* que formaba parte del cuaderno particional, presentado ante ese tribunal por el Contador Partidor, en el cual expresamente se reconocía la deuda en cuestión. Nótese que así lo hizo el tribunal, casi *ad verbatim*, con todos los demás 23 incisos del referido documento.

Resulta meridianamente claro que si tal hubiera sido el caso, contra el peticionario hubiese existido una sentencia firme y final mediante la cual se habrían distribuido todos los bienes de la herencia en cuestión, en conformidad con el informe de un Contador Partidor nombrado en el caso. La partición judicial de la herencia, adoptada y autorizada por el tribunal de instancia en la sentencia original, claramente hubiese convertido al peticionario en deudor de la parte recurrida, y tal deuda en una que era líquida y exigible. En tales circunstancias, la negativa del peticionario a pagar lo adeudado, que obligó a la recurrida a instar una acción de cobro de dinero, hubiese constituido una actitud contumaz, que merecía la imposición de sanciones por frivolidad.

Sobre el particular, debe recordarse que el Art. 1021 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2901, dispone que:

> La partición legalmente hecha confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados.

Como bien ha señalado el profesor Vélez Torres, una vez se realiza la partición, desaparece del patrimonio del heredero el derecho sobre una cuota indivisa, y este heredero adviene titular exclusivo de bienes individualizados. J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Art Printing, 1981, T. IV, Vol. III, pág. 526. De haberse incluido el referido inciso en la sentencia original, al advenir ésta en final y firme como ocurrió, el demandado apelante en el caso de autos se habría convertido indudablemente en un deudor de la demandante, por la cantidad indicada en el cuaderno particional, y su renuencia a pagar dicha cantidad por espacio de cuatro años no tendría justificación legal alguna. En esas circunstancias, tanto el tribunal de instancia en el segundo pleito de cobro de dinero, como el Tribunal de Circuito de Apelaciones en el recurso que nos concierne aquí, hubiesen estado totalmente justificados al imponer sanciones por frivolidad, como lo hicieron.

Sin embargo, en el recurso ante nos el peticionario no nos ha puesto en condiciones de poder esclarecer precisamente qué fue lo que realmente aconteció en el presente caso sobre el asunto en cuestión. No sabemos, a ciencia cierta, por qué el tribunal de instancia en la sentencia de partición original no incorporó expresamente el referido inciso (22) del *Addendum*, que formaba parte integral del cuaderno particional, aunque sí incorporó los otros 23 incisos. Probablemente fue un *error de mecanografía*, ya que la cantidad total del patrimonio que debía distribuirse, según la sentencia en cuestión y el propio cuaderno particional, *incluía lo dispuesto en ese inciso*. Es decir, sin el inciso en cuestión no se podía hacer cabalmente la distribución del caudal hereditario, como se hizo en la referida sentencia. Es probable que en otros documentos judiciales posteriores considerados por el foro de instancia, esta omisión haya sido subsanada. De ser ello así, estaría justificada claramente la determinación de frivolidad que posteriormente hicieron tanto el foro de instancia, como el apelativo. Pero no tenemos manera de saber con certeza si ello fue así. En su petición de *certiorari* ante nos, el peticionario omitió incluir documentos indispensables para poder resolver la cuestión de frivolidad aludida, como lo serían todas aquellas resoluciones, minutas, órdenes y mociones presentadas y dictadas originalmente en instancia sobre la partición de la herencia. Concretamente, el peticionario no incluyó: (1) el primer informe rendido por el Contador Partidor el 11 de enero de 1989; (2) la resolución del tribunal de instancia fechada 19 de mayo de 1989, mediante la cual se aprobó ese informe; (3) el segundo informe presentado por el Contador Partidor el 18 de junio de 1990; (4) su correspondiente aprobación judicial mediante resolución de 5 de julio de 1990; (5) las mociones del peticionario en las cuales impugnó el contenido de esos informes, y (6) las minutas o resoluciones dictadas respecto a dichas impugnaciones.

Evidentemente, el tribunal de instancia y el Tribunal de Circuito de Apelaciones, al elevar los autos originales del

caso, tuvieron ante sí un cuadro completo de los hechos pertinentes aquí mediante el examen de los documentos identificados antes. Por ello, es probable que sus respectivas determinaciones de frivolidad hayan sido correctas. No es esa, sin embargo, nuestra situación.

En resumen, pues, como el peticionario no nos ha puesto en posición de resolver el asunto, lo propio es que se deniegue el recurso ante nos en este caso, por craso incumplimiento con nuestro Reglamento. Ello es lo que procede, porque no podemos realmente considerar en sus méritos el asunto de frivolidad a base del expediente ante nos.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

No obstante estar conforme con la posición de la mayoría de los integrantes del Tribunal, a los efectos de que no le asiste la razón, en los méritos, a la parte peticionaria, expediríamos el recurso radicado a los únicos fines de eliminar la sanción económica que, por alegada frivolidad, le impuso el Tribunal de Circuito de Apelaciones a dicha parte.

Por años, un alto por ciento de los abogados del País estuvieron clamando por que se estableciera en nuestra jurisdicción el derecho a apelar ante este Tribunal de una sentencia final emitida por los tribunales de instancia en casos civiles, ello en sustitución del sistema discrecional, de expedir o no el recurso radicado, que tenía este Foro en relación a dichos recursos civiles.

La Asamblea Legislativa entendió procedente establecer ese derecho de apelación en casos civiles. A esos efectos creó un tribunal apelativo intermedio; hoy, el Tribunal de Circuito de Apelaciones. Al así actuar, el legislador *claramente* expresó que lo hacía con el propósito de asegurar "el derecho de apelación a los ciudadanos en casos civiles y criminales" y para extender "a todo puertorriqueño afec-

tado adversamente por una decisión de un tribunal *el derecho a que un panel apelativo de un mínimo de tres jueces revise esa decisión ...*". (Énfasis suplido.) Exposición de Motivos, Plan de Reorganización Núm. 1a de 1994 (Parte III), Leyes de Puerto Rico, págs. 2801 y 2802.

El legislador, sin embargo, le concedió la facultad a dicho tribunal apelativo intermedio de imponer sanciones económicas a los litigantes en casos en que dicho foro judicial determine "que el recurso ante su consideración es frívolo o que se presentó [el mismo] para dilatar los procedimientos"; *disposición estatutaria que choca, o resulta ser un tanto contraria, al derecho de apelación establecido.*

Dicha situación nos obliga a *interpretar y a establecer un balance* entre la disposición estatutaria antes mencionada y la evidente intención legislativa de brindarle a nuestros conciudadanos el *derecho* a apelar de sentencias emitidas por los tribunales de instancia; ello con el propósito de "penetrar la superficie verbal del problema ante nos, precisar el diseño y la razón de ser de las disposiciones legales que aquí nos ocupan, sopesar los intereses en juego, para intentar acercarnos a la interpretación más justiciera". *Pueblo v. Tribunal Superior*, 104 D.P.R. 363, 366 (1975).

Somos del criterio que el Tribunal, efectiva y correctamente así lo haría estableciendo la norma a los efectos de que la determinación de frivolidad, por parte del Tribunal de Circuito de Apelaciones, únicamente procederá en situaciones enteramente irrazonables, claramente inmeritorias, o sin peso ni lógica alguna.

Permitir lo contrario derrota el propósito principal que tuvo el legislador al precisamente establecer o crear el Tribunal de Circuito de Apelaciones y tendrá un efecto demoledor, o disuasivo, sobre los ciudadanos que resultan perjudicados por una decisión de un tribunal de instancia; ello, por el temor a ser sancionados económicamente.

**— O —**

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón.

La demandante recurrida, Gloria E. Ramos Figueroa, y el demandado peticionario, Samuel Ramos López, fueron parte demandada en un caso anterior sobre división y adjudicación de los bienes hereditarios de Ramón Ramos Rodríguez, padre de ambos (Civil Núm. RF-80-2180). Dicho procedimiento concluyó mediante sentencia dictada el 14 de junio de 1990 por el entonces Tribunal Superior, Sala de Caguas (Hon. Julio Berríos Jiménez, Juez), la cual es final y firme. Dicha sentencia distribuyó los bienes de la herencia en conformidad con el Informe del Contador Partidor nombrado en el caso, así como de un informe suplementario titulado "cuaderno particional" y de un *addendum* que formaba parte de éste. Dichos documentos fueron admitidos como evidencia en el caso de partición de herencia, y en los mismos se señala que Samuel Ramos López le adeudaba a la Sucesión "la suma de [ciento seis mil setecientos sesenta y tres dólares] $106,763.00 de los cuales corresponden [cincuenta y tres mil cuatrocientos ochenta y dos dólares] $53,482 a Doña Celia López Estrella y [trece mil trescientos setenta dólares] $13,370.00 a cada uno de sus hermanos Salustiano Ramos López, Gloria Ramos Figueroa, Angel Luis Ramos López y Ramón Ramos López". Apéndice, pág. 68. Esta deuda no se consignó en la sentencia.

El 19 de abril de 1994, Gloria E. Ramos Figueroa presentó una demanda sobre "cobro de dinero" en el hoy Tribunal de Primera Instancia, Subsección de Distrito, Sala de Caguas. Alegó que el demandado Samuel Ramos López le adeudaba la cantidad de trece mil cuatrocientos sesenta y dos dólares ($13,462) en concepto de la partición de herencia de su extinto padre. Alegó, además, que la deuda era líquida y exigible, para lo cual se refirió a un cuaderno particional preparado por el Contador Partidor nombrado

en el caso de partición de herencia de 19 de diciembre de 1990.

El 10 de junio de 1994 se celebró una vista sobre el estado de los procedimientos, a raíz de la cual, el mismo día, el tribunal dictó la orden siguiente:

> El Tribunal ordena que se una este expediente al caso RF80-2180 del Tribunal Superior de Caguas, con el fin de considerar la demanda como una solicitud de ejecución de sentencia en cuanto al demandado por.lo que solicita en la misma. Se ordena el traslado al Tribunal Superior. Apéndice, pág. 22.

El 16 de septiembre de 1994 la Secretaría del Tribunal de Distrito remitió el expediente a la Secretaría del Tribunal Superior. Apéndice, pág. 23. Sin embargo, el 24 de octubre de 1994 el Tribunal de Distrito dictó la orden siguiente:

> EN VISTA DE LA ORDEN DEL TRIBUNAL SUPERIOR (29 SEPT. 1994) EL TRIBUNAL DE DISTRITO ASUME DE NUEVO COMPETENCIA Y SEÑALA C.A.J.[1]

El Tribunal de Distrito señaló el caso para vista en su fondo, la cual se celebró el 2 de mayo de 1995. Posteriormente, el 6 de noviembre de 1995, dictó sentencia mediante la cual declaró con lugar la demanda. Condenó al demandado peticionario a pagar a la demandante recurrida la suma de trece mil trescientos setenta dólares ($13,370), más los intereses devengados desde que se dictó la sentencia en el caso RF-80-2180, las costas y la cantidad de quinientos dólares ($500) en concepto de honorarios de abogado.

El demandado peticionario interpuso un recurso de apelación ante el Tribunal de Circuito de Apelaciones. Éste dictó sentencia el 30 de agosto de 1996, mediante la cual confirmó la sentencia apelada. Concluyó, además, que la apelación era frívola, y a tenor con la Regla 85(B) del Re-

---

[1] Se refiere esto a la Orden Interna o Resolución Administrativa que dictara el Tribunal Superior, en la que se dispuso: "Se devuelve al Tribunal de Distrito para la continuación de los procedimientos. (*Fdo.* Hon. Héctor M. Rivera González)."

glamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, le impuso a la parte apelante, aquí peticionaria, la suma de trescientos dólares ($300) de honorarios de abogado.

Inconforme con dicha sentencia, el demandado peticionario acudió ante nos mediante un recurso de *certiorari*. Planteó una serie de errores relacionados son la procedencia de la sentencia del Tribunal de Circuito de Apelaciones en los méritos. Además, planteó como error la determinación de frivolidad por parte del Tribunal de Circuito de Apelaciones, respecto a la apelación. El 1ro de noviembre de 1996, emitimos la resolución siguiente:

> Visto el recurso presentado por el demandado peticionario, se le concede a la demandante recurrida el término de veinte (20) días, contados a partir de la notificación de esta resolución, para que muestre causa por la cual no debamos expedir el recurso presentado y dictar sentencia modificando la emitida por el Tribunal de Circuito de Apelaciones, a los únicos efectos de eliminar de la misma la imposición de los trescientos dólares ($300.00) impuestos como sanción por entender que el recurso es frívolo.

La demandante recurrida ha comparecido mediante Moción Informativa en Cumplimiento de Orden de Mostrar Causa. Señala que procede la imposición de la sanción por frivolidad, ya que "no existía ninguna controversia de derecho legítima sobre la corrección de la [s]entencia recurrida" que justificara apelar al Tribunal de Circuito de Apelaciones. Por las razones que a continuación exponemos, disentimos de la resolución que hoy adopta la Mayoría.

La demandante recurrida, en esencia, se refiere a la aplicación de la doctrina de la cosa juzgada en relación con la sentencia dictada el 14 de junio de 1990, en el caso de división de herencia, y el efecto dispositivo de ésta sobre el caso de autos. En instancia invocó la referida doctrina en su vertiente ofensiva, mientras que el demandado peticionario hizo lo propio, mas en su vertiente defensiva. Ambas partes se refirieron a los efectos de la sentencia sobre la

alegada deuda del demandado peticionario con la demandante recurrida, por la cantidad de trece mil cuatrocientos sesenta y dos dólares ($13,462).

La demandante recurrida argumentó que la sentencia de 14 de junio de 1990 adjudicó la existencia de la referida deuda y su cuantía. Se refería a un cuaderno particional presentado por el Contador Partidor nombrado por el tribunal en el caso de división de herencia, que fue admitido como evidencia. De una nota al pie del cuaderno particional surge lo siguiente: "CADA HEREDERO Y LA SRA. CELIA L[Ó]PEZ TIENEN UNA RECLAMACIÓN CONTRA SAMUEL [RAMOS-LÓPEZ] POR $107,693–($53,846 [sic] LA SRA. CELIA LÓPEZ Y $13,462 CADA HEREDERO)." Esta nota no se incorporó expresamente en la Sentencia de 14 de junio de 1990, hecho en el cual el demandado peticionario basó la defensa de cosa juzgada.

El Tribunal de Circuito de Apelaciones acogió la posición de la demandante recurrida. En lo pertinente se expresó el Tribunal de Circuito de Apelaciones de la forma siguiente:

> La sentencia [de 14 de junio de 1990] hace referencia al informe sometido por el contador-partidor nombrado en el caso ... así como a un informe suplementario titulado "Cuaderno Particional", de fecha de 15 de junio de 1990 el cual consta de dos páginas y fue ofrecido y admitido en evidencia en el referido procedimiento. La referida sentencia no vacía *ad verbatim* el contenido del cuaderno particional ni el *addendum* que formaba parte de éste. Sin embargo, expresa la intención de que los bienes sean distribuidos "conforme al cuaderno particional ...". Sentencia recurrida, pág. 2.

De aquí el Tribunal de Circuito de Apelaciones determinó que el recurso era frívolo e impuso una sanción de trescientos dólares ($300) al apelante.

Hemos analizado detenidamente los documentos que obran en autos, los mismos que tuvo ante sí el Tribunal de Circuito de Apelaciones.([2]) De un análisis objetivo de su

---

([2]) Particularmente, la Opinión y Sentencia de 14 de junio de 1990, dictada en el Caso RF-80-2180, sobre división de herencia; el informe que el Contador Partidor presentó en el referido caso y su *addendum*; un documento titulado Cuaderno Par-

contenido no puede colegirse inequívocamente que los planteamientos del peticionario ante el Tribunal de Circuito de Apelaciones fuesen frívolos, carentes de toda lógica y razonabilidad. Un análisis sobre la frivolidad de un recurso no entraña el que se esté de acuerdo con los planteamientos aducidos. Basta con que éstos esbocen un punto de vista contrario que pueda ser sostenido mediante un análisis lógico de los hechos y el derecho para que se descarte la posibilidad de que el recurso se considere frívolo y se impongan sanciones.

La Regla 85(B) del Reglamento del Tribunal de Circuito de Apelaciones, *supra*, aprobado el 25 de abril de 1996, dispone en referencia al asunto de la frivolidad lo siguiente:

> (B) Si el Tribunal de Circuito de Apelaciones determina que el recurso ante su consideración es frívolo o que se presentó para dilatar los procedimientos, lo denegará o desestimará, según sea el caso, e impondrá a la parte promovente o a su abogado(a) las costas, los gastos, los honorarios de abogado(a) y la sanción económica que estime apropiada, la cual deberá reflejar en lo posible, el costo de la dilación para el Estado y para la parte opositora recurrida causado por la interposición del recurso, conforme a las guías que establezca el Tribunal de Circuito de Apelaciones.

Igual disposición contiene la Ley de la Judicatura de Puerto Rico de 1994, según enmendada.([3]) Sin embargo, ninguno de estos dos (2) cuerpos legales define el concepto.

---

ticional; la demanda presentada en el caso de autos, y la sentencia dictada en el mismo por el Tribunal de Primera Instancia. El cuaderno particional que obra en autos tiene fecha de 19 de diciembre de 1990.

([3]) Art. 4.002 de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, 4 L.P.R.A. sec. 22k. La ley dispone, en lo pertinente, que:

"Si el Tribunal de Circuito de Apelaciones determinare que el recurso ante su consideración es uno frívolo o que fue presentado para dilatar los procedimientos, al denegar su expedición impondrá a la parte promovente, además de las costas, gastos y honorarios de abogado, la sanción económica que estime apropiada. Los dineros procedentes de la imposición de sanciones podrán ingresar al Fondo General del Estado Libre Asociado de Puerto Rico o, a discreción del Tribunal, podrán ser asignados a la parte, a la representación legal de la parte recurrida, o a ambas."

No trataremos aquí la posibilidad de que la citada redacción no autorice la determinación de frivolidad con relación a los recursos de apelación. Nótese, sin embargo, que la ley en esta parte utiliza sólo la frase "denegar su expedición", lo cual aplica exclusivamente a recursos discrecionales, como la revisión o el *certiorari*.

La reseñada omisión en la Ley de la Judicatura de Puerto Rico de 1994 y en el Reglamento del Tribunal de Circuito de Apelaciones se justifica, dado que se trata de un concepto que históricamente ha evitado ser encasillado dentro de parámetros definitorios estrictos. La frivolidad equivale a "[a]quello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna". I. Rivera García, *Diccionario de Términos Jurídicos,* 2da ed. rev., New Hampshire, Equity Publishing Corp., 1985, pág. 108. La determinación de frivolidad en apelación debe atender las cuestiones de hecho y de derecho del caso ante el tribunal apelativo. Debe darse paso a las inferencias que razonablemente puedan hacer las partes de los hechos y del derecho aplicables. Sólo lo enteramente irrazonable o inmeritorio debe permitir una determinación de frivolidad.

Estos criterios analíticos se imponen con mayor rigor con relación a los recursos de apelación que se presentan ante el Tribunal de Circuito de Apelaciones. El hecho que el legislador haya concedido expresamente al Tribunal de Circuito de Apelaciones la facultad de imponer sanciones por frivolidad, no desplaza la norma que hemos resaltado en el pasado a los efectos de que al interpretar su reglamento y la Ley de la Judicatura de Puerto Rico de 1994, el Tribunal de Circuito de Apelaciones debe promover que se adelante el propósito de asegurar "el derecho de apelación a los ciudadanos en casos civiles y criminales", y extender "a todo puertorriqueño afectado adversamente por una decisión de un tribunal el derecho a que un panel apelativo de un mínimo de tres jueces revise esa decisión ...". Exposición de Motivos de la Ley de la Judicatura de Puerto Rico de 1994, Plan de Reorganización Núm. 1 de la Rama Judi-

---

Cabe destacar que las mismas disposiciones que hemos citado aparecían tanto en el Reglamento del Tribunal de Circuito de Apelaciones, aprobado el 13 de enero de 1995, como en la Ley de la Judicatura de Puerto Rico de 1994, antes de las enmiendas incorporadas mediante la Ley Núm. 248 de 25 de diciembre de 1995 (4 L.P.R.A. secs. 22i–22k, 22n–22p, 23f y 23n) ambas vigentes al momento en que se presentó ante el Tribunal de Circuito de Apelaciones el recurso en el caso de autos.

cial, 28 de julio de 1994, Leyes de Puerto Rico, pág. 2802. Véase *Soc. de Gananciales v. García Robles*, 142 D.P.R. 241 (1997).

Una aplicación irrestricta del mecanismo de sanciones por frivolidad podría dar al traste con el interés de promover los propósitos reseñados. Tendría un efecto entorpecedor sobre el ejercicio de un derecho reconocido por la Legislatura, al disuadir a las partes de presentar recursos de apelación ante el Tribunal de Circuito de Apelaciones, por temor a ser sancionados económicamente. Ello, con más razón cuando la sanción se impone directamente a la parte. La posibilidad de que las actuaciones del Tribunal de Circuito de Apelaciones tengan este efecto indeseado debe operar en el ánimo del juzgador, impidiendo la imposición de sanciones, excepto en casos claramente inmeritorios. Así, pues, la determinación de frivolidad que puede legítimamente efectuar el Tribunal de Circuito de Apelaciones, al amparo de la Regla 85(B) de su Reglamento, *supra*, depende de que la posición que esgrima la parte ante él no tenga razón de ser, sin méritos, sin peso ni lógica alguna, a la luz de los hechos del caso y del derecho aplicable. De existir duda sobre la frivolidad de un recurso, la balanza debe inclinarse a favor del apelante o recurrente. Ante este marco normativo, debemos analizar la procedencia de la sanción por frivolidad impuesta por el Tribunal de Circuito de Apelaciones a la parte en el caso de autos.

En su escrito de apelación ante el Tribunal de Circuito de Apelaciones, el demandado peticionario le imputó al Tribunal de Primera Instancia haber errado al declarar con lugar la demanda, no obstante ser de aplicación la doctrina de cosa juzgada con relación a la sentencia dictada en el Caso RF-80-2180. Reprodujo así el argumento que había esgrimido ante el Tribunal de Primera Instancia. Contrario a lo planteado por el demandado peticionario, el Tribunal de Circuito de Apelaciones confirmó la determinación del Tribunal de Primera Instancia. Sostuvo que la senten-

cia dictada en el Caso RF-80-8120 "expresa la intención de que los bienes sean distribuidos 'conforme al cuaderno particional, a lo que surge del *addendum* que fue unido a la moción ofrecida [en] evidencia suscrito por [el] contador-partidor", que detallaba la deuda del demandado peticionario para con la demandante recurrida. De ahí que el Tribunal de Circuito de Apelaciones manifestara lo siguiente:

> El demandado litigó el pleito sin defensa válida alguna pretendiendo no cumplir *una obligación que había sido declarada por sentencia*. No hay razón por la cual, luego de más de cuatro años, no pagara la obligación que se había declarado en el pleito RF-80-2180. El demandado en su alegato nos señala que en la sentencia dictada no se adjudicó ninguna deuda que tuviera el demandado con la demandante y que la demandante lo que pretende cobrar es una supuesta deuda que tiene el demandado con ella. A la luz de los hechos del caso su temeridad es manifiesta .... Estimamos, igualmente, que el recurso ante nosotros es frívolo .... (Énfasis suplido.) Sentencia recurrida, págs. 5–6.

De los documentos que obran en autos, los cuales hemos analizado detenidamente, no puede sostenerse que en principio la sentencia del Caso RF-80-2180 dispusiera automáticamente del caso de marras, de forma tal que cualquier planteamiento en contrario pueda ser calificado de frívolo. Es decir, a la luz de estos hechos, sostener una posición contraria podría resultar justificada, meritoria y lógica. Es simplemente un punto de vista distinto que no prevaleció ni ante el Tribunal de Primera Instancia ni ante el Tribunal de Circuito de Apelaciones. El hecho de no prevalecer por sí solo no convierte el planteamiento en frívolo. Veamos.

Primeramente, la referencia que hace el Tribunal de Circuito de Apelaciones a la sentencia en el Caso RF-80-2180, para sostener su interpretación de que dicha sentencia tenía la intención de que *todos* los bienes fueran distribuidos en conformidad con el cuaderno particional, se basa en hechos que son suceptibles a distintas interpretaciones. Al recurrir a la sentencia del Caso RF-80-2180 notamos que esa referencia expresa al cuaderno particional aludía a

un asunto en particular y no a la totalidad de los bienes. En lo pertinente, dispuso el Tribunal de Primera Instancia en el Caso RF-80-2180 lo siguiente:

> Asimismo se dispone si es que ya no se ha hecho que unos dineros que pertenecen a la sucesión que nos ocupa y que tiene bajo su custodia el coheredero Salustiano Ramos López montante a $2,974.00 deberán ser entregados si es que no han sido entregados ya, al Contador Partidor ... *para ser distribuidos conforme al Cuaderno Particional, a lo que surge del Addendum que fue unido a la Moción Ofreciendo Evidencia suscrito por dicho Contador Partidor.* (Énfasis suplido.) Sentencia de 14 de junio de 1990, dictada por el Tribunal de Primera Instancia en el Caso Civil RF-80-2180.

Del texto íntegro de la sentencia en el caso original surge que las expresiones citadas podrían razonablemente merecer un alcance mucho más limitado que el atribuido por el Tribunal de Circuito de Apelaciones en la sentencia recurrida.

Además, cabe destacar que la porción transcrita de la sentencia dictada en el Caso RF-80-2180 recoge la única instancia en que aquel tribunal hizo alusión a deuda alguna que tuvieran los herederos para con el caudal. Es decir, la deuda del demandado peticionario con el caudal no fue incluida en la sentencia dictada, a diferencia de la deuda de otro heredero que, como hemos visto, fue consignada expresamente. Ambas deudas surgían del *addendum* al Informe del Contador Partidor, y sólo la del coheredero Salustiano Ramos López fue incluida en la sentencia, por lo que podría interpretarse que la alegada deuda del demandado peticionario fue expresamente omitida por el tribunal sentenciador. Es también significativo para el asunto que nos ocupa que el inciso del *addendum* que recogía la deuda del demandado peticionario para con los otros coherederos fue el único inciso omitido por el tribunal de instancia en su sentencia. Todos los otros incisos fueron incorporados a la sentencia, en ocasiones *ad verbatim,* incluso en el mismo orden. Estas consideraciones, de por sí, podrían justificar una interpretación contraria a la dispuesta por el tribunal de instancia en el caso de marras, en

torno a si la sentencia del Caso RF-80-2180 establecía la existencia de la deuda del demandado peticionario con la demandante recurrida.

Abunda a la ausencia de frivolidad en este caso el hecho de que el tribunal sentenciador aplicó la doctrina de cosa juzgada en su vertiente de impedimento colateral por sentencia al resolver el caso en instancia.[4] Reconoció también que la aplicación de la referida doctrina requiere la concurrencia de "la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". Art. 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343. Cabe, pues, destacar en este respecto que en el Caso RF-80-2180 las partes en el presente caso fueron codemandados y el pleito era de división de herencia. Es decir, en aquel caso las partes no se enfrentaron en un proceso adversativo en calidad de acreedor y deudor como en el caso de autos, sino como copartes en calidad de coherederos. Ante esta situación, resultaba al menos cuestionable la aplicación de la doctrina de cosa juzgada al caso de autos.

Otra consideración que podría impedir la aplicación inflexible de la doctrina de cosa juzgada es que lo alegado en la demanda del caso de autos no se adecúa exactamente a la sentencia del Caso RF-80-2180. Por ejemplo, del Informe del Contador Partidor al que hizo referencia la demandante recurrida en instancia surgía que la deuda del demandado peticionario ascendía a trece mil trescientos setenta dólares ($13,370). Sin embargo, en la demanda de autos la demandante recurrida expresa que el principal de la deuda a cobrar ascendía a tres mil cuatrocientos sesenta y dos dólares ($13,462), una cantidad distinta a la que surgía del Informe del Contador Partidor en el Caso RF-80-2180. Además, en la demanda se hace referencia a un cua-

---

[4] Al efecto consignó el tribunal de instancia en su sentencia: "La doctrina de impedimiento colateral por sentencia es de aplicación a este caso. No podemos relitigar la misma controversia .... Entendemos que procede su aplicación ofensivamente, a favor de la parte demandante." Sentencia dictada por el Tribunal de Primera Instancia en el caso de autos, págs. 2–3.

derno particional con fecha de 19 de diciembre de 1990, el cual de forma alguna puede contribuir a los efectos de cosa juzgada de la sentencia dictada seis (6) meses antes, el 14 de junio de 1990.

Por último, debemos también atender el trámite del caso de autos en el tribunal de instancia. Recordemos que el caso, inicialmente presentado ante el entonces Tribunal de Distrito, fue trasladado al Tribunal Superior para que el expediente fuese unido al del Caso RF-80-2180 y la demanda se tratara como una solicitud de ejecución de sentencia. De esta actuación surgía la impresión del Tribunal de Distrito que la controversia del caso ya había sido resuelta en el RF-80-2180. Por lo tanto, al negarse el Tribunal Superior a aceptar el traslado efectuado por el Tribunal de Distrito, surgió la razonable impresión de que aquél entendió que se trataba de un asunto nuevo, sin resolver en el pleito original, por lo que el remedio no podía obtenerse mediante la ejecución de la sentencia dictada en el Caso RF-80-2180.

Todos estos elementos, que matizan los hechos del caso de autos, justifican que el demandado peticionario haya acudido en apelación al Tribunal de Circuito de Apelaciones a impugnar la determinación emitida por el tribunal de instancia. Para fines de la presente controversia, que se refiere a la procedencia de la sanción por frivolidad impuesta al apelante por el Tribunal de Circuito de Apelaciones, las inconsistencias señaladas hacían meritorio el planteamiento del demandado peticionario sobre la aplicación de la cosa juzgada en su vertiente defensiva. Por lo tanto, se justificaba que el mismo fuese reiterado ante el Tribunal de Circuito de Apelaciones de forma tal que un tribunal colegiado, de al menos tres (3) jueces, pudiese evaluar la determinación efectuada por un juez del Tribunal de Primera Instancia. Esto no significa que el peticionario tuviese que prevalecer en sus planteamientos, o sea, que le asistiese la razón. El propósito que persigue la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, es darle la oportunidad a un litigante a que un foro colegiado

pase juicio y determine la posición que debe prevalecer cuando existan varias posiciones que resultan conflictivas. Entendemos que la imposición de sanciones a la parte por frivolidad, en casos como el presente, produce un efecto negativo sobre el ejercicio de un derecho claramente reconocido por legislación. Este efecto trastoca el esquema creado al aprobarse la Ley de la Judicatura de Puerto Rico de 1994, por lo que no convalidaremos prácticas que lo produzcan.

Por las razones expuestas, disentimos de la posición que hoy adopta la mayoría de este Tribunal. Expediríamos el recurso a los únicos efectos de eliminar la sanción de trescientos dólares ($300) impuesta por el Tribunal de Circuito de Apelaciones al demandado peticionario y, así modificada, la confirmaríamos.([5])

---

([5]) El hecho que encontremos justificada la postura del demandado peticionario ante el Tribunal de Circuito de Apelaciones no nos obliga a darle la razón en los méritos. Hemos analizado los documentos que obran en autos y, a su tenor, encontramos que la sentencia dictada en este caso por el Tribunal de Primera Instancia es esencialmente correcta. Procede, por lo tanto, confirmar la sentencia dictada por el Tribunal de Circuito de Apelaciones respecto a los asuntos ajenos a la imposición de sanciones por frivolidad que, a su vez, confirmó la del Tribunal de Primera Instancia.